IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   14-cv-03292-WYD-NYW

GREAT DIVIDE BREWING COMPANY,

    Plaintiff,

v.

GOLD KEY/PHR FOOD SERVICES, LLC,

    Defendant.

---

**ORDER ON MOTION TO DISMISS**

---

I.    <u>INTRODUCTION</u>

This is a trademark infringement action brought by Plaintiff Great Divide Brewing Company, a brewing company located in Denver, Colorado, against Defendant Gold Key/PHR Food Services, LLC, a company located in Virginia.  The lawsuit involves Defendant's alleged infringing use of Plaintiff's registered trademark "GREAT MINDS DRINK ALIKE" [the "GMDA Mark"] in the operation of its restaurant in Virginia Beach, Virginia, named Lager Heads.  After learning of Defendant's alleged infringement, Plaintiff filed a Complaint alleging trademark infringement, unfair competition – false designation of origin, federal dilution, common law unfair competition, common law trademark infringement, and deceptive trade practices.  (ECF No. 1.)

On February 19, 2015, Defendant filed a Motion to Dismiss for Lack of Personal Jurisdiction.  Plaintiff filed a response in opposition to the motion on March 10, 2015,

along with a Motion for Jurisdictional Discovery which was referred to Magistrate Judge Wang. Defendant filed a reply to the motion to dismiss on March 17, 2015.

On June 11, 2015, Magistrate Judge Wang granted in part Plaintiff's Motion for Jurisdictional Discovery. She allowed "[l]imited jurisdictional discovery. . . regarding information called for in the response to the motion for discovery including newsletters defendant distributes, number of sales to residents in Colorado, and amount and type of sales in Colorado and the contour and nature of the website as it relates to people in Colorado." (ECF No. 35.) Plaintiff was then granted leave to supplement its response to the Motion to Dismiss, which supplement was filed on July 21, 2015. Defendant filed a response to the supplement that same day.

Defendant argues in its motion to dismiss that Great Divide's Complaint fails to allege sufficient facts from which the Court can assert personal jurisdiction over it, as the facts demonstrate that Defendant has no contacts with the state of Colorado. Thus, Defendant asserts that Plaintiff cannot show that it has the requisite minimum contacts to establish personal jurisdiction in Colorado, such that forcing it to litigate in this foreign jurisdiction would be unreasonable, unduly burdensome, and would offend the traditional notions of "fair play and substantial justice". Defendant also asserts that there is no evidence that it knew of the asserted marks prior to receiving a cease and desist letter from Plaintiff. Plaintiff contends, on the other hand, that Defendant has subjected itself to specific personal jurisdiction in Colorado through its website and other intentional actions, and that the motion to dismiss should be denied.

II.   <u>FACTS</u>

According to the Declaration of Robert Howard, Defendant's Chief Investment Officer ["Howard Decl."], Defendant is a Virginia limited liability company with its principal place of business and only office in Virginia Beach, Virginia.  (Howard Decl., ¶ 2, Ex. A to Def. Gold Key/PHR Food Services, LLC's Mot. to Dismiss for Lack of Personal Jurisdiction ["Mot. to Dismiss"].)  Defendant's sole business operation is to operate a few restaurants in Virginia Beach, Virginia.  (*Id.*, ¶ 3.)

Defendant has no restaurant locations in Colorado. (Howard Decl., ¶ 4.)  It is not licensed to do business in Colorado. (*Id.*, ¶ 5.)  Defendant does not file tax returns in Colorado.  (*Id.*, ¶ 6.)  It does not maintain any offices in Colorado.  (*Id.*, ¶ 7.)  Defendant does not keep any bank accounts in Colorado.  (*Id.*, ¶ 8.)  Further, it does not own any land or personal property in Colorado. (*Id.*, ¶ 9.)

Defendant does not advertise to Colorado residents, and does not sell any goods or provide any services in Colorado.  (Howard Decl., ¶ 19.)  It does not have agents in Colorado, Colorado employees, or warehouse goods in Colorado. (*Id.*, ¶¶ 10-12.) Defendant also does not sell any goods or provide any services in Colorado or have (1) a Colorado mailing address or telephone number, (2) Colorado sales representatives, or (3) any contracts with any entities in Colorado.  (*Id.*, ¶¶ 13-17.)

Defendant uses the allegedly infringing marks GREAT MINDS EAT AND DRINK ALIKE and GREAT MINDS DRINK ALIKE exclusively in connection with the operation of its Lager Heads restaurant, whose only location is in Virginia Beach, Virginia. (Howard Decl.,¶ 18.) Defendant does not advertise or promote its Lager Heads

restaurant in Colorado, or anywhere outside of Virginia. (*Id.*, ¶ 19.) It derived 100% of its revenues in 2014 from operation of its restaurants in Virginia Beach, Virginia. (*Id.*, ¶ 20.)

Plaintiff does not dispute the above facts. It notes the following additional facts, which are not disputed by Defendant.[1] Plaintiff is a Colorado corporation that brews and distributes craft beer. (Pl. Great Divide Brewing Co.'s Resp. to Def. Gold Key/PHR Food Services, LLC's Mot. to Dismiss for Lack of Personal Jurisdiction ["Resp."], Ex. B, Aff. of Brian Dunn ["Dunn Aff."], ¶¶ 2–3.) Plaintiff has operated and been headquartered in Denver, Colorado since its formation in 1994, its financial accounts are in Colorado, and all but three of its employees reside in Colorado. (*Id.*, ¶¶ 3–6.)

Since 1996, Plaintiff has maintained a website at greatdivide.com that informs the general public of its products, its ownership and use of the GMDA Mark, and the location of its headquarters, brewery, and taproom in Denver. (Dunn Aff., ¶ 7.) Plaintiff sells clothing and merchandise containing the GMDA Mark both at its Denver, Colorado headquarters and through its internet website. (*Id.*) It distributes its beer, clothing, and merchandise – all containing the GMDA Mark – throughout the world, including the United States and Sweden. (*Id.*, ¶¶ 7–8.) As part of its branding, Plaintiff suggests food pairings for each of its beers on its labels. (*See* Resp., Ex. C, Colette Label.)

---

[1] Defendant states in its reply brief that it "does not dispute many of the facts" stated by Great Divide in its response. (Reply in Supp. of Def.'s Mot. to Dismiss for Lack of Personal Jurisdiction ["Reply"] at 1.) It does not, however, state which, if any facts, are actually disputed. Thus, I find for purposes of the motion to dismiss that the facts stated in Plaintiff's response and which are supported by evidence are undisputed.

In 2002, Plaintiff registered the GMDA Mark as a U.S. Trademark with Registration No. 2,557,039. (Dunn Aff., ¶ 11.) On March 1, 2008, the U.S. Patent & Trademark Office issued a Notice of Acceptance for the GMDA Mark. (*Id.*, ¶ 12.) Plaintiff began distributing its products in the Virginia Beach, Virginia area in 2004. (*Id.*, ¶ 10.) Currently, Plaintiff's products with the GMDA mark are available at numerous physical locations within five (5) miles of Defendant's Lager Heads' restaurant. (*Id.*, ¶ 9.) They are also available anywhere with an internet connection through Plaintiff's website. (*Id.*, ¶¶ 7, 9.)

Plaintiff submits that according to the Virginia Secretary of State's website, Defendant formed its limited liability company in November 2004. Information contained on several travel websites indicates it opened its restaurant that employs the infringing phrases in 2014. This restaurant operates in the tourist locale of Virginia Beach, Virginia at the Hilton Garden Inn on the Virginia Beach Oceanfront. Thus, Plaintiff contends that Defendant is not just a remote restaurant catering to Virginia residents, but operates in conjunction with an international hotel chain that actively solicits business from Colorado through its website.

Defendant uses craft beer culture as a marketing device at its restaurant, offering nearly 90 varieties of beer, including 20 varieties "on tap," and featuring a menu that suggests styles of beer to pair with each food option. (*See* Resp., Ex. D, Screen Shots from lagerheads.com at 2–27.) To promote its restaurant, Defendant uses two catch phrases that Plaintiff claims are infringing: (1) Great Minds Drink Alike and 2) Great Minds Eat & Drink Alike. (Resp., Ex. D, Screen Shots at 1; Ex. E, Def.'s Website

Capture.)  In addition to using these alleged infringing phrases at its physical location and in its marketing materials, Plaintiff also presents evidence that Defendant uses these infringing phrases on its websites, lagerheads.com and lagerheadsvb.com.  (*Id.*)

At the lagerheads website, Plaintiff submits that visitors from across the United States, including Colorado, can view the infringing phrases.  Defendant provides visitors to its website with information about its restaurant's happy hour, lunch specials, and upcoming live entertainment.  (Resp., Ex. D at 1, 28–30.)  The website provides visitors with descriptions of each beer that is on tap as well as an entire page devoted to explaining different styles of beers.  ( *Id.*, at 17–19, 22–25, 35–41.)  The jurisdictional discovery shows that there have been 61 visitors using IP addresses located in Colorado that have visited www.lagerheads.com.  (Pl. Great Divide Brewing Co.'s Supplement to Resp. ["Supplement"] at 2-3.)

Plaintiff submits that Defendant encourages visitors to its website to join its mailing list and receive updates regarding its activities and promotions.  (Resp., Ex. D at 16, 27, 31, 34, 40–41.)  It provides visitors to the website the ability to contact it directly through a "Contact Us" link.  (*Id.* at 32–33.)

Defendant's website also allows visitors to purchase gift cards that can be used at the Lager Head's restaurant.  Moreover, Defendant admitted that it "received one order for a gift card from an IP address located in Colorado."  (Pl.'s Supplement, Ex. H.). Plaintiff asserts that the gift certificate site to which Defendant's website links also interacts with Colorado residents.  (Ex. H at 3—"there have been 37 visitors using IP addresses located in Colorado that have visited www.dineonthebeach.com").

Before filing its Complaint, Plaintiff made Defendant aware of its infringing activities and requested it discontinue its infringement. (Resp., Ex. F, Letter dated August 26, 2014.) Defendant refused to stop its infringement. On September 22, 2014, Plaintiff made a second request that Defendant discontinue its infringing use of the GMDA Mark. (*Id.*, Ex. G.) Again, Defendant refused.[2] Accordingly, Plaintiff filed this lawsuit to stop Defendant's alleged infringement and protect Plaintiff's intellectual property.

III.    ANALYSIS

Federal Rules of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a complaint for "lack of jurisdiction over the person." The plaintiff bears the burden of establishing personal jurisdiction, although at the preliminary stages of the litigation this burden is light. *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). "The plaintiff may meet this burden 'by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant.'" *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007) (quotation omitted).

Where, as here, there has been no evidentiary hearing and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, "the plaintiff must only make a prima facie showing of personal jurisdiction." *Mealea*, 511 F.3d at 1065. "The plaintiff may meet this burden 'by demonstrating, via

---

[2] Plaintiff also asserts that well before it informed Defendant directly of the infringement, Defendant had myriad reasons to know of its infringement on Plaintiff's Mark in Colorado. It has not, however, provided any evidence on this issue and Defendant disputes this.

affidavit or other written materials, facts that if true would support jurisdiction over the defendant.'" *Id.* (quoting *TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007)). Also, the allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits, and any factual disputes must be resolved in the plaintiff's favor. *Id.* However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true. *Id.*

In a federal question case such as this trademark infringement action "in which the federal statute at issue does not authorize nationwide service of process, personal jurisdiction is determined according to the law of the forum state." *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1189 (D. Colo. 2004). Because Colorado's long-arm statute has been construed by the Colorado Supreme Court as conferring the maximum jurisdiction permissible consistent with the Due Process clause, the inquiry becomes whether the exercise of personal jurisdiction over the defendant comports with constitutional due process demands. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). "[T]o exercise jurisdiction in harmony with due process, [the defendant] must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This requires an analysis of whether "'the defendant has such minimum contacts with the forum state that [it] should reasonably anticipate being haled into court

there.'" *Neimi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (quotation omitted). This can be satisfied by showing either general or specific jurisdiction. *Id.*

Here, Plaintiff essentially concedes, and I agree, that general jurisdiction is lacking. Plaintiff has not shown that PHR's contacts with this form are so 'continuous and systematic" as to justify jurisdiction. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996). Thus, I must determine whether Plaintiff has shown that specific jurisdiction exists.

Plaintiff argues that Defendant's infringing use of the GMDA Mark on its website provides a basis for this Court's personal jurisdiction over Defendant under the specific jurisdiction test. Plaintiff relies on the evaluation of personal jurisdiction based on a party's website under the sliding scale test articulated in *Zippo Mfg. v. Zippo Dot Com*, 952 F. Supp. 1119, 1123–25 (W.D. Pa. 1997). The Tenth Circuit has not "taken a definitive position" on the *Zippo* sliding-scale test. *Shrader v. Biddinger*, 633 F.3d 1235, 1242 n. 5 (10th Cir. 2011). *Shrader* did, however, provide guidance on when a website is sufficient to establish personal jurisdiction.

Thus, *Shrader* held that "[t]he maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." 633 F.3d at 1241. Moreover, "merely posting information on the internet does not, in itself, subject the poster to personal jurisdiction wherever that information may be accessed." *Id.* at 1244. This is because, "in a sense, the internet operates 'in' every state regardless of where the user is physically located, potentially rendering the territorial limits of personal

jurisdiction meaningless." *Id.* at 1240.  "'[T]he plaintiff's residence in the forum, and suffering of harm there'" also alone will not support jurisdiction.  *Id.* (quotation omitted).  Something more is required.  *Id.* at 1241.

The Tenth Circuit in *Shrader* made clear that the internet user or site must have intentionally directed "his/her/its activity or operation *at* the forum state rather than just having the activity or operation accessible there."  633 F.3d at 1240 (emphasis in original).  "[T]his emphasis on intentionally directing internet content or operations at the forum state has its grounding in the 'express aiming' requirement the Supreme Court developed in *Calder* to deal with the somewhat analogous question of specific jurisdiction based on content in nationally distributed print media."  *Id.* at 1241 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).  "[C]ourts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state."  *Id.*; *see also Floyd's 99 Holdings, LLC v. Jude's Barbershop, Inc.*, 898 F. Supp. 2d 1202, 1208 (D. Colo. 2012) (a plaintiff must allege "something more than mere foreseeable economic injury in the forum state to demonstrate that Defendants had sufficient minimum contacts," "and that 'something more' must be that Defendants 'undertook intentional actions that were expressly aimed' at Colorado, such that the forum state was the 'focal point' of Defendants' actions") (quotation omitted).

The Tenth Circuit in *Shrader* cited with approval the Fourth Circuit's decision in *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir.2002).  The Fourth Circuit stated the following test for specific jurisdiction arising out of internet

activity: the person (1) directs electronic activity into the forum state, (2) with the manifested intention of engaging in business or other interactions within the state, (3) that activity creates, in a person within the state, a potential cause of action cognizable in the state's courts. *Shrader* also made clear that, unlike some courts which hold that *Calder* is satisfied when the defendant individually targets a known forum resident, the Tenth Circuit has "'taken a somewhat more restrictive approach, holding that *the forum state itself must be the focal point of the tort.*'" *Id.* at 1244 (emphasis in original) (quotation omitted).[3]

In the case at hand, Plaintiff has presented evidence that Defendant's websites use the allegedly infringing phrases "Great Minds Drink Alike" and "Great Minds Eat & Drink Alike" in reference to its beers. Great Divide also submits that Defendant's website encourages visitors to join Defendant's mailing list and receive updates regarding its activities and promotions, provides visitors the ability to contact Defendant directly through a "Contact Us" link, and allows visitors to purchase gift cards that can be used at the Lager Head's restaurant which purportedly markets and sells products that infringe Plaintiff's trademarks. I find that this is not sufficient to show that Defendant intentionally directed its activity or operation at Colorado, the forum state.

I find instructive the case of *Tomelleri v. MEDL Mobile, Inc.*, No. 2:14-CV-02113-JAR, 2015 WL 1957801 (D. Kan. April 29, 2015). In that case, the defendant developed and launched an app that the plaintiff claimed violated his copyrights. *Id.* at *2. The

---

[3] Thus, I do not agree with Plaintiff's assertion in its supplement that jurisdiction can be conferred through a defendant's activities that are purposefully directed at either Colorado *or* its residents.

defendant maintained a website about its products with hyperlinks to online third-party app stores that sold its app, including Apple's itunes store. *Id.* at *1. The plaintiff did not allege that the app was ever purchased or used by a person located in Kansas. *Id.* at *2. He argued, however, that specific jurisdiction existed based on the defendant's efforts in developing and marketing the app. *Id.* Among other things, the plaintiff relied as a potential basis for satisfying the purposeful-direction prong of specific jurisdiction on the defendant's operation of a website which actively marketed the app to Kansas residents. The court found that this did not provide a basis for specific jurisdiction. Citing *Shrader* and the Fourth's Circuit test approved by the Tenth Circuit, it stated:

> Applying this test to the facts at hand, the Court finds that MEDL did not purposefully direct FishID-related activity at Kansas through operation of its website. With respect to the first prong, Plaintiff does not specify how MEDL directed electronic activity into Kansas. MEDL makes no sales through its website.

*Id.* at *7.

The *Tomelleri* court went on to state that even assuming *Shrader*'s first prong was satisfied based on the website's visibility in the state, "the information posted on the website fails to meet *Shrader's* second prong." 2015 WL 1957801, at *7. This is because "[n]othing visible on the website itself manifests an intent to do business in Kansas." *Id.* "The screenshots Plaintiff submits portraying pages of MEDL's website contain no marketing information directed toward Kansas users in particular." *Id.* "Further, MEDL's provision of information about its products and where and how to purchase them does not demonstrate an intent to do business in every state where that information is viewable." *Id.* "This Court and several others have held that a

-12-

defendant's posting of a hyperlink to the website of a third party through which users can engage in commercial transactions does not, without more, suffice to establish purposeful direction on the part of the defendant." *Id.* (citing, *e.g.*, *Advisors Excel, LLC v. Senior Advisory Group, LLC*, 2011 WL 3489884, at *7 (D. Kan. Aug. 10, 2011) (finding that website alone did not show that defendant expressly aimed its conduct at Kansas, even though it allowed interested users to provide their contact information, because "there is nothing particular about the operation or content of defendant's website that shows a connection with Kansas. It only provides hyperlinks which provide access to other websites").

The same analysis applies here. Plaintiff has presented no evidence that Defendant's websites demonstrate an intent to do business in Colorado, or that it directed electronic activity into Colorado. Thus, the fact that the website allowed persons to contact Defendant or provide their contact information is not sufficient. Defendant makes no sales through its website, and to the extent Plaintiff relies on the website's hyperlink where people can purchase gift cards, Plaintiff has shown that only one gift card was purchased by a Colorado resident. Moreover, under the rationale of *Tomelleri*, the fact that Defendant posted a hyperlink to the website of a third party through which users could purchase a gift card, without more, does not suffice to establish purposeful direction on the part of the defendant, particularly as Plaintiff has not shown that the sale of gift cards is in any way central to Defendant's business. *See also Sucec v. Greenbrier*, No. 11-CV-1716, 2011 WL 5520390, at *2 (M.D. Pa. Nov. 14,

2011); *Hlavac v. DGG Props.*, No. 04-6112, 2005 WL 839158, at *5 (E.D. Pa. Apr. 8, 2005).

Moreover, I find that the fact 61 people with Colorado IP addresses visited Defendant's website does not change this result. First, I find that no inference of intentionality can be drawn from the small numbers of website visitors having a Colorado-based IP address—numbers that are trivial both in absolute terms and as a percentage of total website traffic.[4] Second, there has been no showing that these contacts were made because of some effort by Defendant to purposefully reach out to Colorado through marketing efforts or otherwise. Indeed, Plaintiff has not shown that Defendant in any way purposefully directed its activities at Colorado.

I do not find persuasive the case of *Rainy Day Books v. Rainy Day Books & Café*, 186 F. Supp. 2d 1158 (D. Kan. 2002), that Plaintiff relies on. First, that case relied on the *Zippo* sliding scale test that has not been adopted by the Tenth Circuit. *Id.* at 1163. Second, even if the *Zippo* test is instructive, the defendant's website for its bookstore in the *Rainy Day Books* case had "a high level of interactivity", meaning that the defendant clearly did business over the internet. *Id.* at 1163-64. The website provided an online store for books, where users could search products, browse categories, put items in virtual shopping carts, and pay using a credit card. *Id.* at 10. In

---

[4] Defendant's Response to Plaintiff's Interrogatory No. 2, attached to Plaintiff's Supplement, indicates that for the time period May 1, 2014 to June 30, 2015, 61 visitors with Colorado-based IP Addresses visited Defendant's website, out of a total of approximately 31,185 total site visits, representing approximately 0.20% of worldwide visits to the site. For the time period May 1, 2014, to June 30, 2015, only 37 visitors to the related www.dineonthebeach.com website had Colorado-based IP addresses, out of approximately 30,362 total site visits, representing approximately 0.12% of worldwide visits to this website.

contrast, Defendant in this case does not sell products on its website, save for gift cards through a link to a new webpage. I previously found this is insufficient to trigger personal jurisdiction. Defendant's website is, for the most part, passive, and does not have sufficient interactivity to trigger personal jurisdiction. *See Outdoor Channel, Inc. v. Performance One Media, LLC*, 826 F. Supp. 2d 1271, 1284-87 (N.D. Okla. 2011).

Plaintiff also relies, however, on the fact that it sent cease and desist letters to Defendant and that Defendant continued its infringing behavior. It relies on the fact that the *Advisors Excel* court found that the "something more" required to establish specific jurisdiction was established by the fact that after receiving the cease and desist letter with notice that the plaintiff was in Kansas, the defendant continued to infringe the mark. 2011 WL 3489884, at *8. The court found significant, however, the fact that not only had the defendant been placed on notice of the infringement, it "had also affirmatively stated it would no longer infringe plaintiff's trademark." *Id*. This took defendant's contacts with Kansas to be "beyond merely 'random, fortuitous, or attenuated.'" That action did not occur by the defendant in this case.

Moreover, I find the analysis in the *Tomelleri* case to be more persuasive. It noted that, as here, none of the defendant's "intentional actions after receiving the cease and desist letter were expressly aimed at the state of Kansas." 2015 WL 1957801, at *6. While continuing to sell the app "after receiving the letter may have rendered a Kansas resident the victim of an intentional tort", the court found "that act standing alone does not create a jurisdictionally relevant contact between MEDL and the state of Kansas itself." *Id*. The *Tomelleri* court went on to state:

> And the record does not suggest that MEDL took any other intentional action aimed at Kansas after becoming aware of Plaintiff's alleged copyrights. Plaintiff does not allege, for example, that MEDL sold any copies of the FishID app to Kansas residents. He does not contend that MEDL advertised the app in Kansas after receiving the cease and desist letter. Nor is there any indication that MEDL's continuing to offer the app for sale was directed at an audience that would inherently include a substantial number of Kansas residents. Absent such a showing, Plaintiff has not established that MEDL expressly aimed tortious activity at Kansas with knowledge that the brunt of the injury would be felt in this state.

*Id.; see also Floyd's 99 Holdings, LLC*, 898 F. Supp. 2d at 1208 ("'[T]hat [defendant] may have infringed on [plaintiff's] mark outside of Colorado, and did so knowing that [plaintiff] was a Colorado resident and that this infringement would have effects in Colorado, is not sufficient to demonstrate express aiming at this forum'") (quoting *Impact Products, Inc. v. Impact Products, LLC*, 341 F. Supp. 2d 1186, 1191 (D. Colo. 2004) (internal quotation marks omitted)).

I agree with and adopt the *Tomelleri* analysis here. While Defendant continued its infringement after the cease and desist letters, that also was not sufficient to create specific jurisdiction. Plaintiff has not shown that after becoming aware of the infringement, it took any other intentional acts aimed at Colorado, such as selling its products to Colorado residents or advertising here. *See also Sharpshooter Spectrum Venture, LLC v. Consentino*, No. 09-CV-0150-WDM-KLM, 2011 WL 3159094 (D. Colo. July 26, 2011) (finding that while the defendant intentionally directed activity into Colorado by operating its website which was accessible in Colorado "after having constructive and actual notice that Plaintiff owns the "Sharpshooter" trademarks, specific jurisdiction did not exist because there was no evidence that Defendant

"'deliberately targeted or exploited' the Colorado market" because there was no evidence that the defendant "has ever had a customer from Colorado or that his website has been accessed by Colorado. . . ."); *Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1053 (D. Colo. 2012) (finding lack of specific jurisdiction where plaintiff did not show that websites "specifically targeted a Colorado audience, engaged in commercial or other significant transactions with Colorado residents, or otherwise were connected to Colorado").

IV. <u>CONCLUSION</u>

Based on the foregoing, I find that Plaintiff has not met its burden of showing that sufficient minimum contacts exist to justify the exercise of personal jurisdiction over Defendant. Accordingly, it is

ORDERED that Defendant Gold Key/PHR Food Services, LLC's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 11) is **GRANTED**, and this case is **DISMISSED WITHOUT PREJUDICE**.

Dated: August 31, 2015

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge